McElroy *vs.* Seery.

(Decided 21st February, 1884.)

---

James W. McElroy *vs.* Edward F. Seery.

*Sale of Goods—Insolvency of the Buyer—In transitu—Assignment for benefit of Creditors—Statute of Frauds—Delivery and Acceptance—Trover.*

The insolvency of the buyer does not in itself revoke an agreement for the purchase of goods made prior to the insolvency. If the property in such case is delivered, the title vests in the assignee. The seller may stop the goods *in transitu*, but if he does not, the title passes on delivery.

The same principle applies to the case of a voluntary assignment for the benefit of creditors.

On the 18th of September, 1882, H. trading as T. F. H. & Co., ordered through R., salesman for S., a bill of merchandise amounting to $364. The goods were sold on a credit of sixty days, to be delivered in Baltimore. At the time the order was given, the following memorandum in writing was made by R. "T. F. H. & Co., 88 South Charles St., Baltimore, Maryland," followed by an itemized statement of the goods ordered and the prices to be paid. This memorandum R. testified was made to send to S., that he might fill the order, and for no other purpose. It was not signed either by him or by H. On the same day R. mailed the order directed to S., at Providence, R. I., by whom it was received on the 19th of September. On the 20th of September, H. made an assignment to M. of all his property, rights and credits, whether in possession or

McElroy *vs.* Seery.

expectancy, for the benefit of his creditors. On the 22nd of September, S. shipped the goods by express consigned to T. F. H. & Co., 88 S. Charles St., Baltimore, and on the 25th of September, M., being notified by the express company of their arrival, directed the goods to be delivered to H. C. & Co., auctioneers, by whom they were sold, with other stock in trade of T. F. H. & Co., at auction. During the month of October, 1882, M. notified S. of the assignment to him from T. F. H. & Co., and requested him to forward his claim; and on the 31st of October, the book-keeper of S. by his direction, made up and forwarded a statement of his said claim, which was received by M. about the 1st of November. In an action of *trover* subsequently brought by S. against M. to recover the value of the goods, it was HELD:

1st. That the memorandum made by R. at the time the goods were ordered, did not constitute a note or memorandum in writing within the 17th section of the Statute of Frauds.

2nd. That after the shipment of the goods by S., in pursuance of an order of H. and their arrival at Baltimore, all that was necessary to complete the sale was an acceptance by him or his agent.

3rd. That the assignment by H. to M. did not interfere with, much less avoid, contracts made between H. and other parties. On the contrary his rights and interests under such contracts passed to the assignee, and the acceptance of the goods by him made the sale complete.

4th. That there was no ground on which an action of trover could be maintained against M.

APPEAL from the Baltimore City Court.

The case is stated in the opinion of the Court.

*Exception.*—At the trial which was had before the Court without the intervention of a jury, the plaintiff offered the following prayer:

1. If the Court shall find from the evidence, that on or about September 18th, 1882, T. Francis Hall verbally contracted with Earl T. Richards, the travelling agent of the plaintiff, who was then in Baltimore, for the purchase

from the plaintiff of the goods mentioned in the deposition of said Richards, upon a credit of sixty days, and that said Hall, on September 20th, 1882, made a deed of assignment to the defendant, of all his property, for the benefit of his creditors, and that the plaintiff in ignorance of said deed, on September 22nd, 1882, shipped by Adams Express Company, from Providence, Rhode Island, to Baltimore, Maryland, the goods which had been so ordered by said Hall, in a box directed to T. F. Hall and Company, 88 South Charles street, Baltimore, and that on September 26th, 1882, the agents of the defendant obtained the same from the said Adams Express Company, upon the written order of the defendant offered in evidence, and said goods were sold by said agents of the defendant on his account, then such sale was a conversion of said goods by the defendant, and the plaintiff is entitled to recover in this action, the fair market value of the goods so received by the agents of defendant at the time of such sale, less any express charges paid by the defendant.

The Court (Fisher, J.,) granted this prayer, and the defendant excepted. The Court rendered a verdict in favor of the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before Alvey, C. J., Stone, Miller, Robinson, and Bryan, J.

*Frank Gosnell*, for the appellant.

The sale from Seery, the appellee, to Hall was valid, the order for the goods and the bills of parcels taking the case out of the Statute of Frauds (*Drury, et al. vs. Young,* 58 *Md.,* 548), and being on credit, the title immediately passed to Hall. He was at once entitled to the possession, and the right of property at once vested in him. 2 *Kent Com. (9th Ed.),* 671 ; *Leonard, et al. vs. Davis, et al.,* 1 *Black.,* 483 ; *Tome vs. Dubois,* 6 *Wallace,* 554.

The title to the goods passed to the appellant by virtue of the deed of trust from the vendee (Hall), although the delivery of the same by the appellee did not take place until after the assignment. *Scott, et al. vs. Pettit*, 3 *Bos. & Pul.*, 471; *Conyers vs. Ennis*, 2 *Mason*, 236; *Blow, et al. vs. Gage, et al.*, 44 *Ill.*, 208; *Lacker, et al. vs. Rhoades, et al.*, 45 *Barb.*, 499; *Benjamin on Sales, sec.* 858.

Purchases made by a firm, before an assignment, arriving afterwards, the title thereto vests in the assignee, the seller having failed to exercise the right of stoppage *in transitu.* The Court of Appeals of Illinois, in the case of *Blow, et al. vs. Gage, et al.*, in 44 *Ill.*, 217, saying:

"It is urged that, as the firm had ordered goods that had not been received, their appropriation to the general fund was a badge of fraud. It seems that these articles had been ordered some time before, and had not been received. After the assignment was made the assignees took these, as well as all other property, into possession for the benefit of the creditors. Upon their arrival, the *legal title vested* in the assignees, the seller having failed to exercise the right of stoppage *in transitu.* We are aware of no rule of law that required the firm to give notice of their failure."

The bankruptcy of the buyer not being in law a rescission of the contract, and the assignees being vested with all his rights, the delivery of the goods into the buyer's warehouse after his bankruptcy, or an actual possession of them taken *by his assignees* will suffice to terminate the right of stoppage *in transitu.* 2 *Benjamin on Sales,* 1058.

There could have been no conversion in this case without a demand and refusal, the appellant's possession having commenced and continued under contract. *Nixon vs. Jenkins*, 2 *Hy. Bl.*, 135; *Jones vs. Fort*, 9 *B. and C.*, 768; *Bohn vs. Headley*, 7 *H. & J.*, 257; *Stewart, Adm'r, &c., vs. Spedden*, 5 *Md.*, 449; *Stevens vs. Hyde*, 32 *Barb.*, 181; *Bliss vs. Cottle*, 32 *Barb.*, 325.

The contract for the purchase of the goods having been affirmed by the appellee with full knowledge of all the facts, it was too late to attempt to repudiate it and bring trover. There is no proof in the case that the vendor (the appellee), by any direct act or declaration, in words or otherwise, ever elected to avoid the original sale to Hall & Co.

And lastly, it must be observed that in this case there is not the slightest evidence of any fraud on the part of the vendee (Hall), in the purchase of the goods in controversy. All the facts present a much stronger case than those cited in this brief, and that as from the proof there can be no recovery, a *procedendo* ought to be refused if the judgment is reversed. *Stewart, Adm'r vs. Spedden*, 5 *Md.*, 449; *Bohn vs. Headley*, 7 *H. & J.*, 257.

*William Reynolds*, for the appellee.

The prayer of the appellee is based upon the proposition that at the time of the sale of the goods by Higgins, Cobb & Co., for account of the appellant, the legal title to them still remained in the appellee, and that therefore he is entitled to maintain his action of trover. Under the 17th section of the Statute of Frauds, no title passed from the appellee, because there had neither been an acceptance by the buyer of any part of the goods ordered, nor any part payment, nor any note or memorandum in writing of the bargain signed by the appellee or his agent, or by Hall.

The effect of the deed of trust of the 20th of September was to vest in the appellant the legal title to all the property which Hall *then* owned, in trust for the persons to whom he was *then* indebted, or in other words, his existing creditors. Hall, at the time of executing this deed, had acquired no title to the goods for the conversion of which, by the appellant, this action was brought, for they were not packed and shipped to him for two days

after, and therefore no property in them passed by the deed to the appellant. No title to these goods subsequently passed to Hall, because they were never accepted and received either by him or by any person having authority from him to accept and receive them, such acceptance and receipt being both· necessary before the bargain between Hall and Richards could become a valid contract under the Statute of Frauds. *Benjamin on Sales*, *secs.* 140, 156, 158 ;· *Caulkins, et al. vs. Hellman*, 47 *N. Y.*, 449; *Smith vs. Hudson*, 6 *B. & S.*, 431, 34 *L. J. Q. B.*, 145; *Nicholson vs. Bower*, 1 *E. & E.*, 172, 28 *L. J. Q. B.*, 97; *Jones & Co. vs. Mechanics' Bank of Baltimore*, 29 *Md.*, 287, 293.

Even if there had been a written contract valid under the 17th section of the Statute of Frauds, the property in the goods shipped by Seery would not have passed to Hall until the date of their actual shipment, which was on the 22nd of September, two days after the deed to McElroy. *Benjamin on Sales, sec.* 360, *&c.; Wallace vs. Breeds*, 13 *East*, 522; *Fragano vs. Long*, 4 *B. & C.*, 219; *Magruder & Bro. vs. Gage*, 33 *Md.*, 344; and consequently the deed to McElroy could not, by any possibility, confer upon him the property of said goods.

A delivery to and acceptance by McElroy, as *agent of Hall*, subsequent to the execution of the deed, would have vested the property in *Hall* himself, and it could not then have vested in McElroy, as his trustee, save by an assignment or transfer made *after* the property had so passed. As a matter of fact McElroy signed the order for the delivery of the property as *assignee* of Hall, and not as his agent, and there is no proof of any assignment having been made by Hall to McElroy after the deed of September 20, 1882.

When the appellant therefore took possession of the goods which the appellee shipped to T. F. Hall & Co., on the 22nd of September, 1882, he stood· in a very different

relation to Hall from that which assignees in bankruptcy occupy towards their bankrupts under the English Statute of Bankruptcy, for the property which vests in the assignees under the statute, is "the whole that the bankrupt had in himself at the time he committed the first act of bankruptcy, *or that has vested in him since, before his debts are satisfied or agreed for*"—*Blackstone Com., Bk. II, p.* 485—whereas the assignment made to appellant, and under which he claims, only purported to convey, and only could convey all the property which belonged to Hall at the time of its execution and delivery.

As to the rights of assignees under English statutes, over property acquired by bankrupt, after commissioner's assignment and before certificate, see *Hesse vs. Stevenson,* 3 *Bos. & P.,* 565, 577, 578; *Kitchen vs. Bartoch,* 7 *East,* 53, 60.

ROBINSON, J., delivered the opinion of the Court.

On the 18th of September, 1882, T. Francis Hall, trading as T. Francis Hall & Co., ordered through one Richards, salesman for the appellee, a bill of merchandise, amounting to $364.00. The goods were sold on a credit of sixty days to be delivered in Baltimore. At the time the order was given, the following memorandum in writing was made by Richards:

"T. F. HALL & Co., 88 South Charles St., Baltimore, Maryland."

Then follows an itemized statement of the goods thus ordered and the prices agreed to be paid for the same. Richards says the memorandum was made in order that the appellee might fill the order, and for no other purpose. It was neither signed by him nor by Hall. On the same day Richards mailed the order directed to the appellee at Providence, Rhode Island, by whom it was received on the 19th of September. On the 20th of September Hall made an assignment to the appellant of all his property,

rights and credits for the benefit of his creditors.   On the 22nd of September the appellee shipped the goods in controversy by express, consigned to T. Francis Hall & Co., 88 South Charles Street, Baltimore, and on the 25th of September the appellant being notified by the Express Company of their arrival, he directed the goods to be delivered to Higgins, Cobb & Co., auctioneers, by whom they were sold together with the stock in trade of Hall & Co. at auction.   During the month of October, 1882, the appellant notified the appellee of the assignment to him from Hall & Co., and requested him to forward his claim; and on the 31st of October the appellee directed his book-keeper to make up and forward a statement of his claim, which was accordingly done and was received by the appellant about the 1st of November.   The appellee subsequently sued the appellant in *trover* to recover the value of the goods.

Two questions arise in this case:  First. Was there a note or memorandum in writing of the contract of sale within the 17th section of the Statute of Frauds?   By the common law all that was required to give validity to a sale of personal property, whatever may have been the amount or value, was the mutual assent of the parties to the contract.   This once established by evidence, either verbal or written, that the one should transfer the absolute property in the thing to the other for a money price, the contract was completely proven and binding on both parties.   To prevent Frauds and Perjuries, however, the 17th section of the Statute of Frauds provided that no contract for the sale of goods, &c., of the value of ten pounds or upwards should be valid, except the buyer shall receive and accept part of the goods so sold, or give something in earnest to bind the bargain or in part payment, or that some note or memorandum in writing of the said bargain be made and signed by the parties to be charged or their agents thereunto lawfully authorized.

It is essential, therefore, that the written memorandum should show who are the contracting persons. Not only who is the person to be charged, but also who is the person in whose favor he is charged, for it takes two to make a bargain. This was expressly so decided in *Champion, et al. vs. Plummer*, 4 *Bos. & Pul.*, 252, where the plaintiff by his agent wrote down in a memorandum book the terms of a verbal sale to him by the defendant, and the defendant signed the writing, but the words were simply "Bought of W. Plummer, &c.," with no name of the person who bought. Sir JAMES MANSFIELD, C. J., said : "How can that be said to be a contract, or memorandum of a contract, which does not state who are the contracting parties? By this note it does not at all appear to whom the goods were sold. It would prove a sale to any other person as well as to the plaintiffs." And again in *Allen vs. Bennet*, 3 *Taunt.*, 169, the agreement was written in a book belonging to the plaintiff and was signed by the defendant, but the plaintiff's name was not in the book and was not mentioned in the memorandum, and it was held that the memorandum was insufficient. Other cases might be cited, but this is unnecessary. *Cooper vs. Smith*, 15 *East*, 103, and *Jacob vs. Kirk*, 2 *Moody & Rob.*, 222. In this case the memorandum was neither signed by Hall & Co., nor does the name of the appellee anywhere appear upon the face of it. It was made by Richards, the salesman, merely as an order to be filled by the appellee, and such a memorandum, according to all the cases, is not within the 17th section of the Statute.

We come now to the next and the more important question. Was there a delivery and acceptance of the goods? They had been shipped by the appellee in pursuance of Hall's order, and they had arrived at Baltimore, and all that was necessary to complete the sale was an acceptance by him or by his agent. Unless then the assignment by Hall operated as a revocation of the

agreement to buy, he unquestionably had the right to accept them. Now it is well settled that the insolvency of the buyer does not in itself revoke an agreement for the purchase of goods made prior to the insolvency. If the property in such cases is delivered, the title vests in the assignees. The seller may stop the goods *in transitu,* but if he does not the title passes on delivery. *Scott vs. Pettit,* 3 *B. & P.,* 471; *Heinekey vs. Earle, et al.,* 8 *Ellis & Black.,* 410; *Conyers vs. Ennis, et al.,* 2 *Mason,* 236; *Blow, et al. vs. Gage, et al.,* 44 *Illinois,* 217.

The same principle applies to the case of a voluntary assignment for the benefit of creditors. Here Hall conveyed to the appellant all his property of every kind and description, whether in possession or expectancy, for the benefit of his creditors, without preference or priority, and without exacting releases. The assignment did not interfere with, much less avoid, contracts made between Hall and other parties. On the contrary his rights and interests under such contracts passed to the assignee. In all fairness it may be said the appellant ought in this case to have refused to accept the goods and so notified the appellee. This may be true, but in other cases where the property is of a perishable character, and could not be returned without great loss, it may be to the interest of the seller that the assignee should accept and thereby complete the sale. But be this as it may, this case, like all other cases, must be governed by the general principles which lie at the bottom of all sales of personal property. The seller may before parting with the property provide against loss, but if he sees proper to sell on credit, relying on the ability of the buyer to pay, the law cannot in all cases protect him.

The case of *Conyers, et al. vs. Ennis, et al.,* 2 *Mason,* 236, decided by Judge STORY, is somewhat analogous to the one now before us. There Rousmaniere, a merchant of Newport, Rhode Island, on the 4*th of May* ordered of the

plaintiff, a merchant of Charleston, South Carolina, 30 casks of rice. On the *6th of May* Rousmaniere committed suicide. The plaintiff not knowing of the death of Rousmaniere, on the 16th of May shipped the rice in pursuance of the order, and on the 24th of May it arrived at Newport. The rice was delivered to the administrators of the intestate, and by them it was sold, and it was held that the vendor had no right either to reclaim the property or the proceeds of sale.

"Nothing is better settled," said Judge STORY, "if an uninterrupted series of authorities can settle the law, than the doctrine, that the vendor in cases of insolvency, can stop the property only while it is in its transit. If it has once reached the consignee, there is an end of all right to reclaim it as a pledge for the payment of the purchase money. If the doctrine were to go the length now contended for, it is far from certain that it would promote public convenience or policy. Where could we stop? Could it be applied with safety to purchases made at any distance of time, if it should turn out in the event, that the buyer was then insolvent?"

In this case the goods were not only delivered to the appellant, but the appellee with knowledge of the assignment forwarded his claim to the assignee to be filed for distribution. There is no ground on which an action of trover can be maintained against the appellant. The Court erred therefore in granting the appellee's prayer, and we must reverse the judgment without awarding a new trial.

> *Judgment reversed, without
> awarding a new trial.*

(Decided 28th February, 1884.)